UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARGARET J. GOMEZ, | ) | Case No. 1:07 CV 2106 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Margaret J. Gomez filed this appeal seeking judicial reversal under 42 U.S.C. §1383(c)(3) from the administrative denial of supplemental security benefits. At issue is the ALJ's decision dated April 24, 2006, which stands as the final decision of the Commissioner. See 20 C.F.R. §404.1481. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

The Commissioner found that Gomez is a younger individual, age 48, who suffers from the severe impairments of multiple sclerosis and a cognitive disorder (Tr. 23).The Commissioner discredited her complaints o of fatigue, pain and cognitive limitations to find that Gomez was capable of lifting and carrying 50 pounds, with no limitations on sitting, but stand/walking was restricted to only 4 hours of a workday, with assistance of a cane, and her cognitive impairment limited her to simple, repetitive work (Tr. 23). The physical restrictions are in large part based on the opinion from treating physician Dr. Klein (Tr. 415). According to vocational expert testimony

1: 07 CV 2106                                                                 2

these restrictions did prevent Gomez from performing her past relevant work, but she could nonetheless work as a security monitor, information clerk, food assembler, packing line worker, and assembler.

>Gomez challenges the Commissioner's decision contending :
>
>1. The ALJ erred in finding that the plaintiff's impairment(s) did not meet or equal the listings of impairments at 11.09 and 12.02/12.05.
>
>2. The ALJ's residual functional capacity determination is erroneous as it is not supported by the medical evidence of record, it erroneously fails to take into account the plaintiff's testimony of disabling symptoms, and it is contrary to 6th Circuit case law.
>
>3. The ALJ erred in relying upon vocational expert testimony that is incorrect and violated SSR 00-4p in failing to ask the vocational expert if his testimony was consistent with the DOT.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

1: 07 CV 2106                                    3

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

      The requisite analysis at the final stages of administrative review is known as the five-step sequential evaluation process. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.  See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d).  If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987).Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739

1: 07 CV 2106                                     4

F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The Commissioner concluded that Gomez was no longer able to perform her past relevant work, so the burden shifted to the Commissioner to establish that Gomez was capable of substantial gainful activity that was available in significant numbers. See 20 C.F.R.§404.1572, 416.972; 42 U.S.C.§423(d)(1)(A),§ 1328c(a)(3)(A) (Substantial gainful activity), 42 U.S.C. §423(d)(2)(A), §1328c(a)(3)(B)(significant numbers).

*Listing of Impairments:*

Gomez first agues that the severity of her multiple sclerosis meets or equals §11.09 of the Listings from Appendix 1. The burden to establish that a claimant meets or equals a listed impairment is upon the claimant. *Land v. Secretary*, 814 F.2d 241, 244 (6th Cir. 1986); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). In order to meet a listed impairment the claimant must meet all the requirements of a listed impairment "For a claimant to show that his impairment matches a listing, [the claimant] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify (emphasis in original)." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990); and see *Hale v. Secretary*, 816 F.2d 1078, 1083 (6th Cir. 1987). The listing for multiple sclerosis reads:

> 11.09 **Multiple sclerosis**. With:
>
>> A. Disorganization of motor function as described in 11.04B; or
>>
>> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
>
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

Gomez contends under §11.09C that her condition meets §12.02 and that she is disabled due to her cognitive disorder plus the existence of multiple sclerosis.

This section incorporated into §11.09 of the listing reads at length:

> 12.02 **Organic Mental Disorders**: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
> 1. Disorientation to time and place; or
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
> 4. Change in personality; or
> 5. Disturbance in mood; or
> 6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;
>
> AND
>
> B. Resulting in at least two of the following:

1: 07 CV 2106                                              6

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.02.

Gomez assumes that the "criteria in . . . 12.02" includes both section A-criteria and B-criteria. This assumption is correct. Section 11.09 B refers only to "criteria," and this word has been judicially construed to mean all aspects of a listed impairment, not simply the beginning functional definition. See *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991)(referring to "'A' criteria" and "'B' criteria."); *Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(referring to "B criteria"). Consequently irrespective of the presence of "A criteria" of §12.02, there must be consideration of the "B criteria" or the alternate "C criteria." Gomez lacks medical evidence to support "marked" impairment under the lack of "B criteria," and Gomez does not present evidence ro support a finding of disability under the "C criteria" of §12.02.         Since Gomez' impairment is a mental impairment as categorized under Chapter 12.00

1: 07 CV 2106                                    7

of the Listing of Impairments, the sequential evaluation must be applied in conjunction with §404.1520a governing mental impairment and its SSI counterpart §416.920a. This requires rating the degree of functional limitation in accordance with the prescribed psychiatric review technique (PRT). The primary purpose of the PRT is to assess whether or not a claimant's mental restrictions meet or equal the listing of impairments. 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3) incorporate assessment of severity as described under §12.00C of the Listing of Impairments of Appendix 1. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C. The procedure is to rate "four broad functional areas" of activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation. See 20 C.F.R. §404.1520a(c)(3); §416.920a(c)(3). The first three functional areas are rated on the five point scale of "none," "mild," "moderate," "marked," and "extreme." See §404.1520a(c)(4); §416.920a(c)(4). The last area, deterioration or decompensation is rated on the four-point scale of "none," "one or two," or "three, four or more." *Id.*

Gomez refers to the reports from neuro-psychologist Dr. Chelune and the state aagency consultative psychologist, Mr. Davis, for the proposition that their findings establish a marked impairment (Tr. 128-33, 331-337). Dr. Chelune did believe that Gomez' concentration and attention was "significantly constricted" (Tr. 131). The problem confronted by litigants in these situations is that the definitions contained in §12.00C provide only a very general description of "marked" limitation for the first three functional areas, and this difficulty is compounded by the lack of any definitions of "mild" or "moderate. These nebulous descriptions make it extremely difficult for litigants to target the severity of impairment as being "moderate" instead of "marked." Moreover, when it comes to administrative

1: 07 CV 2106                                        8

consideration of medical equivalence, as opposed to meeting a listed impairment, there must be consideration of the opinion given by medical or psychological consultants designated by the Commissioner. See 20 C.F.R. §404.1526(c); §416.926(c) and (d). This designated consultant's opinion presents a formidable obstacle because, " long standing policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight. SSR 96-6p, 1996 WL 374180 at *3. The Commissioner's determination relied on the opinions from the state agency consultant. (Tr. 19, 21). A state agency psychologist reviewed the medical evidence as it related to §§12.02 and 12.05 of the listed impairments and concluded that there was at most "moderate" impairment in maintaining concentration, persistence or pace (Tr.338-353, 348). These findings were adopted in the determination (Tr. 21), and the Commissioner's rejection of Gomez' argument, that the medical record established the existence of impairment of sufficient severity to meet or equal a listed impairment, was supported by substantial evidence.

*Failure to update:*

Gomez next argues that the ALJ's reliance on the state agency physicians' medical assessments is misplaced because critical medical evidence was submitted after their reports in 2003, and SSR 96-6p required the Commissioner to seek updated opinions. To the contrary, "Social Security Ruling 96-6p (1996) provides that an ALJ must obtain an updated medical opinion from a medical expert if, and only if, the ALJ believes that "the symptoms, signs, and laboratory findings reported in the case record suggest

that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Hardee v. Commissioner of Social Sec.,* 188 Fed.Appx. 127, 129, 2006 WL 2053099, *1 (3rd Cir. 2006). Gomez' arguments are based on the findings of Dr Chelune, Mr. Davis, and Psychologist Dr. Miller (Tr. 299-307), all of whom issued their reports prior to review by the state agency psychologist. Gomez offers no subsequent psychological opinion, much less a subsequent psychological opinion that would have pertained to establishing "marked" mental impairment. The Commissioner's decision is supported by substantial evidence on this point.

*Credibility:*

Gomez attacks the Commissioner's residual functional capacity finding for failure to take into account the unpredictable and episodic nature of multiple sclerosis. She points out that the Commissioner relied heavily on Dr. Klein's residual functional capacity without including the qualifying notation "problems worsen when flare of disease-not predictable" (Tr. 415). She also faults the Commissioner for not crediting her testimony about fatigue, pain and cognitive difficulties, and that her attempts to engage in work activities were used against her. See *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981)(Fact that child was able to attend college on a part-time basis did not show that she was able to engage in substantial classroom activity and fact that she was able to perform some work at the college for a nine-month period, before losing that job, did not show that the child, who suffered from multiple sclerosis prior to her 22nd birthday, had the ability to engage in substantial gainful activity. ); *Wilcox v. Sullivan*,

1: 07 CV 2106                                                           10

917 F.2d 272, 277 (6th Cir. 1990)(activities engaged in by claimant during periods of remission did not constitute evidence of substantial gainful employment.).

The claimant's ability to perform work activity on a sustained basis is certainly an important consideration. See *Damron v. Secretary of Health and Human Services*, 778 F.2d 279, 282 (6th Cir. 1985); *Cranfield v. Commissioner, Social Security*, 79 Fed. Appx. 852, 858 (6th Cir. 2003); 20 C.F.R. §404.1512(a). Intermittent work capability during remission does not establish a claimant's residual functional capacity.

> Residual functional capacity is defined as the `maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.' 20 C.F.R. pt. 404, Subpt. P, App. 2 §200.00(c) (1989) (emphasis added). In determining a claimant's physical abilities, we must assess the severity of [claimant's] impairment(s) and determine [claimant's] residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. §404.1545(b) (1989) (emphasis added).

*Cohen v. Secretary*, 964 F.2d 524, 530 (6th Cir. 1992).

Resolution of fatigue and other problems allegedly plaguing Gomez rest on her credibility. Fatigue, like pain, cannot be objectively documented. The Commissioner citing normal daily activities and Gomez' collaboration with Dr. Klein in preparing the residual functional capacity assessment found no disability. This factored in that "[t]he evidence demonstrates the claimant is episodically unsteady on her feet and her symptoms occasionally worsen when she has a flare-up." (Tr. 19).

1: 07 CV 2106                                                                       11

This leads to one of the key considerations in evaluating impairment due to multiple sclerosis, that "consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities.(footnote omitted)" See *Wilcox v. Sullivan* 917 F.2d at 277. Gomez refers to the report from Vocational Guidance Services that indicated a 40% absenteeism rate due to medication side-effects. (Tr. 354-66, 358). The Commissioner's decision contains no findings on the frequency of "flare-ups" or the length of remissions. The decision, contrary to *Parish* and *Wilcox,* uses Gomez's work attempts against her and does not include consideration of the side-effects of medication.

In the Sixth Circuit, credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). SSR 96-7p sets out a basic rule for pain analysis which prohibits unexplained decisions concerning credibility which are based on a "single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible' . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

1: 07 CV 2106                                        12


The regulatory considerations require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii).


Evaluation of complaints of pain require consideration of daily activities. See 20 C.F.R. §504.1529(c)(3)(I). It was well established even before the foregoing regulation that the Commissioner certainly can consider daily activities and their inconsistency with alleged pain. See *Gist v. Secretary of Health & Human Services*, 736 F.2d 352, 358 (6th Cir. 1984); *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir. 1986); *Blacha v. Secretary of Health & Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). Surprisingly, among these activities is Gomez's part-time employer's accommodation by allowing her to use a wheelchair and electric cart in her work as an airport mobile assistant (Tr. 20). The Commissioner found work stamina, but without an explicit consideration of the

1: 07 CV 2106                                                     13

frequency of flare-ups and inability to work due to medication side-effects.[1] The Commissioner's determination of Gomez' residual functional capacity consequently was inadequately explained and lacks any obvious support from the record.

*Vocational testimony:*

Dr. Chelune found Gomez performed adequately in following simple procedures but was moderately impaired in ability to follow more complex tasks (Tr. 129). The consultative psychologist, Mr. Davis found Gomez could follow simple direction and simple repetitive tasks. (Tr. 337). The ALJ incorporated these restrictions into the non-exertional restriction of "simple, repetitive tasks" and asked the vocational expert to consider this restriction. (Tr. 621-22, 625). There is no dispute that Gomez is limited to simple, repetitive tasks, the dispute is over whether the vocational expert identified any jobs which were in fact "simple, repetitive tasks."

Gomez refers to the *Dictionary of Occupational Titles*, 4th Ed., 1991 (*DOT*)[2] in arguing that the jobs identified by the vocational expert were not simple, repetitive type work, and that the ALJ erred in

---

[1] The vocational expert testified under the disclaimer that the jobs identified did not include consideration of the duration and frequency of the multiple sclerosis flare-ups. (Tr. 616). So no support in the record for the Commissioner's findings may be garnered from this vocational testimony.

[2] This is available at http:// www.oalj.dol.gov . The DOT was created by the Employment and Training Administration, and was last updated in 1991. It was included on the Office of Administrative Law Judges web site because it was a standard reference in several types of cases adjudicated by the Office of Administrative Law Judges. The DOT, however, has been replaced by the O*NET.

1: 07 CV 2106                                                        14

failing to ask whether the vocational testimony was consistent with the *DOT*. Social Security Ruling 00-4-p explicitly places this affirmative duty on the ALJ. See *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008); *Renfrow v. Astrue*, 496 F.3d 918, 920 (8th Cir. 2007); *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005).[3] The Commissioner seeks to excuse this procedural lapse arguing that the transcript of the administrative hearing indicates that the ALJ did not make that inquiry in this case. However, the vocational expert testified at the hearing that he did not have all of the *DOT* information with him (Tr. 624-25). In the Commissioner's view any attempt to question the vocational expert would have been futile. The ALJ asked the vocational expert to prepare the *DOT* information after the hearing, and held the record open. (Tr. 625, 633). The vocational expert subsequently submitted information from the *DOT* which he characterized as appropriate to his testimony at the hearing (Tr. 126). The ALJ proffered this information to Gomez, and gave her the opportunity to object to it (Tr. 127).[4] There clearly was error since the ALJ did not request assurance for the vocational

---

[3] When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, * 4


[4] The vocational expert in his brief letter identified the occupations of order clerk, security surveillance monitor, food assembler, assembler, packing line worker, and cashier with their corresponding "SVP" rankings.

1: 07 CV 2106                                                    15

expert consistent with the requirements of SSR 00-4p.  However, such error can be harmless. See *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374-75 (6th Cir. 2006).

Gomez argues that this error was not harmless because the ALJ erred in equating unskilled work with simple, repetitive work.   The ALJ did fail to obtain testimony concerning consistency with the *DOT,* but the ALJ did not confuse unskilled work with simple, repetitive work.  That confusion rested entirely with the vocational expert. (See Tr. 621). The vocational expert stated that "simple, repetitive tasks" were synonymous with "unskilled work."

Jobs are considered unskilled it if takes less than 30 days for the average person to learn how to do them.  *DOT*, Appendix C, Unskilled jobs are given ratings of either SVP 1 or SVP 2. However, there is a difference between how long it takes to learn a job and the level of difficulty of the tasks associated with that job. For example, a job may require the performance of detailed or even complex tasks, but may still be considered unskilled because so few tasks are involved that the average person could learn the job in less than 30 days. Similarly, while a job may involve only simple tasks, there may be so many tasks involved that it takes more than 30 days to master them all.

Appendix C to the *DOT* makes it clear that a person with a restriction to simple tasks cannot necessarily perform all unskilled work. The *DOT* includes separate designations for the Specific Vocational Preparation (SVP) required – i.e. "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance

1: 07 CV 2106                                16

in a specific job-worker situation."See *DOT*, Appendix C. For example , at SVP 1, a job is learned during a "[s]hort demonstration only," and, at SVP 2, a job is learned during "[a]nything beyond short demonstration up to and including 1 month." See *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D.Cal.).

Specific Vocational Preparation (SVP), though is to be contrasted to "reasoning levels" found under General Education Development ("GED"), which reflects education obtained in elementary school, high school, or college required for an occupation. See *DOT*, Appendix C. It is the "reasoning level" of an occupation that indicates whether that occupation requires only simple one or two step tasks. The *DOT* defines six different reasoning levels of jobs, varying from R1 to R6. A reasoning level of R1 is used to designate those jobs that require the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." A reasoning level of R2 is used to describe jobs that require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."

There is consensus that simple, repetitive work is inconsistent with the demands of level-three reasoning See *Hackett v. Barnhart*, 395 F.3d at 1176; *Estrada v. Barnhart*, 417 F.Supp.2d 1299, 1303-04 (M.D.Fla.2006); *Squier v. Astrue*, 2008 WL 2537129, at *5 (C.D.Cal.); *Tudino v. Barnhart ,* 2008 WL 4161443, at*10 (S.D.Cal.). However, there is division on the issue whether level-two reasoning exceeds the demands of simple, repetitive work. A panel of the Third Circuit has found that "[w]orking at

1: 07 CV 2106                                  17

reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive." *Money v. Barnhart* 91 Fed.Appx. 210, 215, 2004 WL 362291, *3 (3rd Cir. 2004). This position appears also in *Hackett*, ( 395 F.3d at 1176), *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984-85 (C.D.Cal 2005), *Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001), and *Tudino v. Barnhart,* 2008 WL 4161443, at *11. Gomez, however, relies on caselaw from the District of Maine, e.g. *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D. Me. Apr 30, 2004), and *Hodgson v. Barnhart*, 2004 WL 1529264, *2 (D.Me. Jun 24, 2004), which relied upon *Allen v. Barnhart,* 2003 WL 22159050, at *10, 90 Soc. Sec. Rep. Serv. 476 (N.D.Cal.).

> *Allen* explains:
>
> All of the named jobs except three, however, involved a reasoning level of two. Reasoning levels are found under the General Education Development ("GED") and reflect education obtained in elementary school, high school, or college. Dictionary of Occupational Titles, Appendix C. Reasoning level two requires the worker to be able to "[a]pply commonsense understanding to carry out detailed but involved written and oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, Appendix C. The need to follow "detailed" and "involved" instructions exceeds the ALJ's limitation of plaintiff to "simple, routine tasks." Such instructions are not simple and uncomplicated, or limited to one or two steps.
>
> *Allen v. Barnhart,* 2003 WL 22159050, at *10.

*Gomez* concedes that Appendix C provides that the occupations of food assembler and packing line worker are scored at reasoning level 2, so the question becomes to what extent were the errors harmless. Gomez argues for a reasoning level of 1 to equate with simple, repetitive work, and this court agrees based on the reasoning in *Allen.* Further if the ALJ had wished to clarify this issue she could have

1: 07 CV 2106                                                           18

requested the vocational expert to explain. Thus the ALJ's failure to abide with administrative procedure coupled with the total omission of reasoning on this key factor establishes that the ALJ's decision was not supported by substantial evidence.

*Remand for award of benefits:*

In this circuit, though, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).

There is some precedent for remanding matters to allow the ALJ to obtain the missing explanation from the vocational expert where apparent conflict exists between the *DOT,* a claimant's limitation to simple, repetitive tasks and the jobs identified by the vocational expert. See *Whitzell v. Barnhart*, 379 F.Supp 2d 204, 219 (D.Mass.2005); *Carter v. Barnhart*, 2005 WL 3263936 (D.Me.2005); *Estrada v. Barnhart* 417 F.Supp.2d at 1303. However, this court based on this record views this matter as more in the nature of a legal, not factual, issue. There was nothing in the determination qualifying or mitigating from the restriction to simple, repetitive tasks to cause the court to question whether Gomez could in some respect perform at reasoning level two or above.  Mr Davis reported that Gomez could perform simple oral directions and that Gomez slowly performed simple, repetitive tasks. (Tr. 337). This negates any support for the conclusion that Gomez retains the abilities at R2 for  understanding or carrying  out

1: 07 CV 2106                                              19

detailed but uninvolved written or oral instructions. Consequently, the Commissioner's decision is clearly erroneous, and proof of disability is overwhelming, so that this matter is remanded for the award and calculation of benefits.

## *CONCLUSION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying supplemental security income benefits was not supported by substantial evidence and is reversed and remanded for the award and calculation of benefits.

                                                    s/James S. Gallas                
                                               United States Magistrate Judge

Dated: September 26, 2008